# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES THORNTON (#2010-0720078), | ) |
| Plaintiff, | ) |
| v. | ) No. 14 C 6477 |
| | ) Judge Jorge L. Alonso |
| DR. BAKER and NURSE ONYEACHANOM, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles Thornton, a pretrial detainee at the Cook County Jail (the "Jail"), brings a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that he was pushed down while trying to get out of the way during a fight that occurred in the bullpen at the Jail on January 7, 2014. Plaintiff asserts that defendants, Dr. Baker and Nurse Onyeachanom, were deliberately indifferent to his resulting objectively serious medical condition. Before the Court is defendants' summary judgment motion, which is denied for the reasons explained below.

## BACKGROUND

Plaintiff was shot in the head in 2009, and the bullet remains near his spinal cord. (R. 53-2 at 8:11-13.) Plaintiff was treated for his gunshot wound at John H. Stroger Jr. Hospital of Cook County ("Stroger Hospital"). (R. 53-3 at 22:3-7.) Dr. Baker and a doctor from Stroger Hospital told plaintiff that the bullet could not be removed because it is too close to his spinal cord and surgery may result in paralysis. (R. 53-2 at 19:16-20.)

On January 7, 2014, a fight broke out in the Jail bullpen, where plaintiff was present. (R. 53-2 at 26:23.) Roughly thirty inmates were involved in the fight. (*Id.* at 29:15.) Plaintiff was pushed down while trying to get out of the way of the inmates who were fighting. (*Id.* at

30:9-10.) When plaintiff fell, he landed on his right arm and rolled on his back. (*Id.* at 35:19-20; 36:3-4.) Plaintiff felt pain in his back and his shoulder as a result of the fall. (*Id.* at 36:8-11.)

When plaintiff returned to his tier, he told a correctional officer that he was hurt. (*Id.* at 39:1-3.) The correctional officer allowed plaintiff to go to the dispensary. (*Id.* at 42:5-7.) There, plaintiff spoke with Nurse Onyeachanom. (*Id.* at 44:11-12.) Plaintiff told her that he had pain in his neck, shoulder and back, and that the right side of his body hurt. (*Id.* at 45:11-12.) Plaintiff says that he could barely turn his neck and head and that he had "sharp, shooting, radia[ting] pain running up and down [his] back." (*Id.* at 54:14-16.) Because he was sore, plaintiff was also limping after the fall. (*Id.* at 54:21.) Despite plaintiff's being told he would be seen by a doctor and sent to Cermak for x-rays, neither occurred. (*Id.* at 46:1-18, 20.) At some point, plaintiff was told to leave the dispensary and did. (*Id.* at 55:2.)

Plaintiff returned to the dispensary the following day. (*Id.* at 55:5.) He was seen by a unit manager and Nurse Onyeachanom. (R. 51-1 at 310.) Plaintiff complained of pain in his neck and shoulder. (*Id.*) Plaintiff then saw Dr. Baker, who ordered a refill of plaintiff's prescriptions for 800 milligrams of gabapentin and 750 milligrams of methocarbanol.[1] (*Id.* at 377, 500.) According to plaintiff, Dr. Baker did not perform a physical examination of him. (R. 51-2 at 60:21-22.) Plaintiff was still in pain when he left the dispensary, and he believed that he had been denied proper medical attention. (*Id.* 64:12, 17-18.)

On January 29, 2014 and February 20, 2014, plaintiff saw Nurse Onyeachanom. (R. 53-1 at 315, 323.) Both times, Nurse Onyeachanom instructed plaintiff to continue his medication

---

[1]According to plaintiff, both medications are used to relieve pain. (R. 53-2 at 18-19, 21.)

and reminded him that he was scheduled for an appointment with his primary care physician. (*Id.*)

On April 3, 2014, Dr. Baker ordered refills of plaintiff's prescriptions for gabapentin and methocarbanol. (*Id*. at 503.) On April 9, 2014, plaintiff saw Dr. Baker, at which time plaintiff complained of stiffness in his neck, back pain, and difficulty turning his neck to the right. (*Id.* at 380.) Ultimately, Dr. Baker ordered three different kinds of radiological exams, which were performed on April 11, 2014. (*Id.* at 634-636.) These exams showed no acute fractures of the cervical spine. (*Id.*)

## DISCUSSION

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party, here plaintiff. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). A factual dispute is "genuine" only if a reasonable jury could find for either party. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014).

### B. Analysis

Jail officials violate an inmate's constitutional rights "when they display 'deliberate indifference to serious medical needs'" of the inmate. *See Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) (explaining that deliberate indifference claims brought by pretrial detainees against jail personnel arise under the Fourteenth Amendment rather than the

Eighth Amendment but are analyzed under the same standard). Jail officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). To prevail on a claim of deliberate indifference, a plaintiff must show both that he suffered from an objectively serious medical condition and that the defendant ignored a serious risk to the inmate's health. *See Greeno*, 414 F.3d at 653. As to both requirements, plaintiff provides sufficient evidence to preclude summary judgment.

   1.   **Objectively Serious Medical Condition**

An objectively serious medical condition is one that has been diagnosed by a doctor as needing treatment, or a condition so serious that even a lay person would easily recognize the need for medical attention. *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). Defendants argue that plaintiff did not have an objectively serious medical condition because there was no physical manifestation of his injury, and they state that "the only visible injury Plaintiff suffered was a temporary limp." (R. 56 at 7.) But plaintiff claimed that he suffered from pain in his neck, back, and shoulder. Pain is an objectively serious medical condition. *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007). There is no need for an objective manifestation of pain; it is sufficient for a patient to claim to be in pain. *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("Pain, fatigue, and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition."). Furthermore, plaintiff's situation was complicated by his preexisting condition of a bullet lodged near his spinal cord. Plaintiff asserted that he was pushed to the ground during a fight and injured. Accordingly, there is sufficient evidence from

4

which a jury could conclude that plaintiff had an objectively serious medical need.

2. **Deliberate Indifference**

Plaintiff also presents sufficient evidence from which a jury could find that the defendants acted with deliberate indifference. The record shows that plaintiff went to the dispensary the day of his fall and informed Nurse Onyeachanom that he had pain in his neck, shoulder, and back and on the right side of his body. Despite plaintiff's complaints of pain and the fact that he was told he would see a doctor that day and be sent to Cermak for x-rays, nothing happened. He had to wait until the following day to see a doctor. On January 8, 2014, plaintiff saw Dr. Baker and told him about the fight and that he had been injured. Dr. Baker did not perform a physical examination of plaintiff and, instead, simply renewed his existing prescriptions for 800 milligrams of gabapentin and 750 milligrams of methocarbanol.

The Court is mindful that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment," *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 97), and a plaintiff is not constitutionally entitled to the medication or treatment of his choice, *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Nevertheless, "[t]he failure to consider an individual inmate's condition in making treatment decisions is . . . precisely the kind of conduct that constitutes a substantial departure from accepted professional judgment, practice, or standards, such as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 862-63 (7th Cir. 2011) (internal quotation marks and brackets omitted); *see also Vance v. Peters*, 97 F.3d 987, 992 (7th

Cir. 1996).

It is possible that, based on their prior interactions with plaintiff, defendants believed plaintiff was exaggerating his complaints of pain. It is also possible that defendants did not believe plaintiff and thought that his pain was related to his preexisting condition. However, the Court cannot resolve these factual issues at the summary-judgment stage. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (holding that medical professional's decision to reject prisoner's claim that he was in pain due to belief that he was a malingerer resulted in a question for the jury); *see also Toombs v. Mitcheff*, No. 1:14-cv-480-TWP-DKL, 2016 WL 67296, at *5 (S.D. Ind. Jan. 4, 2016) ("To the extent [defendant] opines that [plaintiff] was exaggerating his complaints of pain, this is not a fact that the Court can resolve at the summary judgment stage."). While the defendants' method of treating plaintiff's condition may have, in fact, been reasonable under the circumstances, there is little evidence in the record regarding how or on what they based their medical determinations. Plaintiff says that Dr. Baker did not perform a physical examination of him on January 8, 2014, and there is little evidence about the bases for the decisions to twice refill plaintiff's prescriptions for gabapentin and methocarbamol at the same dosage levels. It is unclear whether Dr. Baker attempted at any point to determine the efficacy of plaintiff's existing medications and dosages or what the basis was for his decision to wait nearly three months after plaintiff's fall to order diagnostic tests. Accordingly, on the current record, the Court cannot grant defendants' motion for summary judgment.

## CONCLUSION

Defendants' motion for summary judgment [54] is denied. The Court requests that attorney Stephen Rudisill, Nixon Peabody LLP, 70 West Madison St., Suite 3500, Chicago, IL 60602 represent plaintiff in this matter pursuant to counsel's trial bar obligation under Local

Rule 83.11(g). The case is set for status on September 20, 2016 at 9:30 a.m. Counsel for the parties are directed to meet and confer in person or via telephone prior to the status hearing to discuss settlement.

**SO ORDERED.**                 **ENTERED:   August 24, 2016**

**JORGE L. ALONSO**
**United States District Judge**